**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 27, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

In re:  DONALD HARRY ALLEN,

      Debtor.

------------------------------

DONALD HARRY ALLEN,

      Appellant,

v.

KAREN ABSHER, Receiver;
DELANGHE/BUYSSE, LLC;
ROBERTSON B. COHEN, as Chapter 7
Trustee,

      Appellees.

No. 14-1242
(D.C. No. 1:13-CV-01470-WJM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **LUCERO** and **MATHESON**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Appellant Donald Harry Allen, appearing pro se, is the debtor in a Chapter 7 bankruptcy proceeding. He appeals the district court's order affirming the bankruptcy court's order approving the sale of his stock in two oil companies to his creditor, Appellee DeLanghe/Buysse, LLC ("DL/B"). We have jurisdiction under 28 U.S.C. § 158(d)(1) and affirm.

## I.  BACKGROUND

We briefly summarize the facts and procedural background, which are thoroughly discussed in the district court's order. Mr. Allen was the sole owner and chief executive officer of American Energy Resource Corporation ("AERC") and H&M Petroleum Corporation ("H&M"), which jointly operated oil leases. TCA Global Credit Master Fund, LP ("TCA Global"), a secured creditor of AERC and H&M, succeeded in asking a Colorado state court to place AERC and H&M into receivership in January 2012. The state court appointed Appellee Karen Absher as receiver. She had served as the companies' outside accountant. In April 2012, AERC and H&M filed for Chapter 11 bankruptcy. The bankruptcy court found it was in the companies' best interest to have Ms. Absher serve as trustee for AERC's and H&M's bankruptcy estate.

Mr. Allen then obtained loans from DL/B to pay off the TCA Global loan. The loans were secured by all of Mr. Allen's remaining shares in AERC and H&M, as well as his oil production rights from these companies and all of his real and personal property. Under the term sheet for the loan (the "Term Sheet"), DL/B

acquired 20 percent of Mr. Allen's stock in AERC and H&M and agreed it would "not take steps to dilute [Mr.] Allen's ownership interest in AERC or H&M." R. Vol. 1, at 240. The Term Sheet also stated that "[o]nce [Mr.] Allen regains control of AERC and HM, he shall remain in day-to-day control of the companies," and "shall be entitled to draw his salary." *Id*. at 240-41.

Mr. Allen paid off the TCA Global loan but never regained control of AERC and H&M. He failed to make the payments due DL/B and filed a Chapter 7 liquidation proceeding in July 2012. Appellee Robertson B. Cohen was appointed as trustee (the "Trustee") for Mr. Allen's bankruptcy estate. Mr. Allen's remaining stock holdings in AERC and H&M were the largest assets in his estate.

In January 2013, Trustee Cohen moved under 11 U.S.C. §§ 363(b) and (f) to sell to DL/B Mr. Allen's remaining stock in AERC and H&M for $664,566.38, free and clear of all liens, in satisfaction of Mr. Allen's debt to DL/B. Section 363(b) authorizes a trustee to use, sell, or lease property of the bankruptcy estate outside of the ordinary course of business, and § 363(f) permits the assets to be sold free and clear of all liens if certain conditions are met.

Mr. Allen objected, asserting the proposed sale price was inadequate. The bankruptcy court ruled that Mr. Allen's valuation allegations gave him sufficient economic interest to have standing to challenge the sale. The bankruptcy court conducted a two-day hearing, at which Mr. Allen appeared pro se. The Trustee presented evidence from an expert in forensic accounting and business valuation;

from Ms. Absher and her husband, who is also an accountant; and from an oil and gas attorney. Mr. Allen testified as well. Almost all testimony concerned the valuation of the stock. Mr. Allen very briefly asserted during the hearing that DL/B had prevented him from paying the loan by intervening in the state court receivership to retain Ms. Absher in control of the companies, but he presented no supporting evidence for this assertion. He also asserted that Ms. Absher had conspired with his brother, the companies' office manager, in mismanaging AERC and H&M, which resulted in the receivership.

The bankruptcy court approved the sale as an appropriate exercise of the Trustee's business judgment. It described the Trustee's efforts to market the stock, which included hiring an attorney who sought offers from seven potential purchasers and found no buyer other than DL/B. The bankruptcy court also detailed the evidence supporting the Trustee's valuation of Mr. Allen's stock and concluded the Trustee had fulfilled his duty to maximize the value obtained from the stock sale. It noted that Mr. Allen believed AERC and H&M to be worth many millions based on potential oil production, but the forensic accountant had testified the stock had no value. The accountant had considered the companies' revenue potential, lack of any recent income, and significant debt. Finally, the court stated that neither the Trustee nor DL/B had testified about negotiations between them. There was thus no evidentiary basis to determine whether DL/B was a good faith purchaser for purposes of 11 U.S.C. § 363(m), which provides that the validity of a sale to a good faith

purchaser cannot be disturbed on appeal unless the order authorizing sale has been stayed.

On appeal to the district court, Mr. Allen argued, now with counsel, that the bankruptcy court had erred in failing to find that DL/B was a good faith purchaser before approving the stock sale. The district court affirmed. After a detailed analysis, it concluded that courts within the Tenth Circuit have not required an explicit finding of good faith to approve a sale under § 363(b), but have held so only when § 363(m) is at issue, which it is not in this case. The district court concluded the bankruptcy court's finding of no bad faith was not clearly erroneous. Mr. Allen appeals.

## II.    DISCUSSION

### A. *Standard of Review and Legal Background*

"In reviewing a bankruptcy court decision under 28 U.S.C. § 158(a) and (d), the district court and the court of appeals apply the same standards of review that govern appellate review in other cases." *In re Hodes*, 402 F.3d 1005, 1008 (10th Cir. 2005). "Thus, we review de novo the legal decisions of the bankruptcy and district courts . . . [and] review the bankruptcy court's factual findings for clear error." *Yellow Cab Co-op. Ass'n v. Metro Taxi, Inc. (In re Yellow Cab Co-op. Ass'n)*, 132 F.3d 591, 596-97 (10th Cir. 1997) (citations and internal quotation marks omitted). We construe Mr. Allen's pro se filings liberally, but we do not construct

arguments or otherwise advocate on his behalf. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

The "business judgment" test applies to determine whether a sale under § 363(b) should be approved. *See, e.g.*, *In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004) (citing *Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983), as "the most cited authority [for] the proper standard for the [c]ourt's use in considering a proposed motion to sell"). Under this standard, the Trustee seeking approval of the sale must show sound business reasons for the sale. *Id.* In making this determination, courts consider evidence of "[a]ny improper or bad motive," whether "[t]he price is fair and the negotiations or bidding occurred at arm's length," and whether the trustee followed "[a]dequate procedures, including proper exposure to the market and accurate and reasonable notice to all parties in interest." *Id.*

## B. *Analysis*

Reading Mr. Allen's brief generously, he appears to argue the business judgment test generally was not met, in particular because (1) the bankruptcy court overlooked evidence of bad faith, and (2) DL/B violated provisions in the Term Sheet.

The primary issue Mr. Allen presented to the bankruptcy court was the value of the stock in his bankruptcy estate. We have reviewed the record and conclude it supports the bankruptcy court's findings regarding the value of the stock, as well as

its findings the Trustee followed adequate procedures in conducting the sale, including proper exposure to the market and reasonable notice. He makes two specific arguments here.

First, Mr. Allen argues the bankruptcy court ignored evidence of bad faith or improper motive in approving the sale of stock, including conclusory allegations that DL/B, Ms. Absher, and the Trustee acted in bad faith or with an improper motive. He further argues the bankruptcy court failed to consider his allegations that Ms. Absher had mismanaged AERC and H&M operations. We reject these arguments because Mr. Allen failed to support his allegations in the bankruptcy court. He presented no evidence of bad faith, collusion, misconduct, or fraud, nor evidence the sale was not an arm's-length transaction.

Second, Mr. Allen asserts he presented evidence of bad faith and improper motive based on his allegations that DL/B violated its promises in the Term Sheet (1) not to dilute his ownership in AERC and H&M, (2) that he would remain in control of its operations, and (3) that he was entitled to his salary. He asserts DL/B prevented him from regaining control of AERC and H&M by intervening in the state receivership, which forced him into bankruptcy. He claims he was unable to make the loan payments due on the DL/B loans because of misconduct, fraud, and collusion among DL/B, Ms. Absher, and the Trustee. But Mr. Allen again did not provide evidence that DL/B breached the Term Sheet, prevented him from repaying the loan or from regaining control of AERC and H&M, or inappropriately colluded

with the Trustee or Ms. Absher.  The Term Sheet itself is not evidence of a breach or of bad faith.

*   *   *   *

The record supports the court's finding that the sale was within the Trustee's sound business judgment.

## III. **CONCLUSION**

We conclude the bankruptcy court did not err in approving the stock sale under §§ 363(b) and (f).  We affirm the district court's order affirming the § 363(b) sale of assets for substantially the same reasons stated in its thorough and sound order dated May 21, 2014.  We deny Mr. Allen's motion to supplement his reply brief because "[i]ssues not raised in the opening brief are deemed abandoned or waived."  *Coleman v. B-G Maint. Mgmt. of Colo., Inc*., 108 F.3d 1199, 1205 (10th Cir. 1997).  We also deny Mr. Allen's remaining pending motions[1] because they raise issues not presented

---

[1] Namely, Mr. Allen's motions (1) to remove or replace Ms. Absher as AERC's and H&M's receiver based on her misconduct, perjury, fraud and incompetence; (2) to prosecute Ms. Absher for conspiracy, collusion, perjury and fraud; (3) for a temporary restraining order against the Appellees and their agents; (4) to prosecute Dennis J. Bartlett, Esq., DL/B's counsel, and/or the Appellees for Perjury; (5) to request sanctions and to file a formal complaint against the Trustee and his counsel, Maria Flora, for dereliction and neglect of duty; (6) to file sanctions against G. David Miller and Ms. Absher, under 42 U.S.C. § 1983; (7) to request a Court Appointed Audit regarding his assets, and AERC's and H&M's assets; and (8) his motion for leave to file out-of-time replies to DL/B's and the Trustee's responses to his motions.

in his opening brief, issues over which we lack jurisdiction, or issues that are otherwise wholly without merit.  We deny Ms. Absher's motion for sanctions.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge